■ In the Matter of THOMAS MCGRATH, Petitioner, v NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents.—Proceeding pursuant to section 298 of the Executive Law to review an order of the State Human Rights Appeal Board, dated June 30, 1975, which affirmed the determination of the State Division of Human Rights dismissing the complaint charging the State University of New York with discriminatory practices

relating to petitioner's employment because of race, color and sex. Petitioner joined the faculty of SUNY at Plattsburgh for the fall term of 1967-1968. In accordance with university policy he was reviewed for tenure during the 1972-1973 academic year. On April 19, 1973 he was recommended for tenure. On June 5, 1973, however, the President of Plattsburgh sent a memorandum to the Dean of Professional Studies which, in pertinent part, stated that he could not recommend continuing appointment for faculty members without a general review of the impact of such appointment on the over-all welfare of the university. In connection therewith, the president requested the dean to prepare a plan that would project faculty tenure from 1974 to 1980, with emphasis on procedures relative to continuing appointment of faculty that would assure opportunity for employment of new people, including women and members of minority groups. This course of action requested by the president was adopted and the recommendations for tenure of petitioner and five other faculty members were held in abeyance pending the review. Since petitioner's employment, in any event, would not have terminated until August 31, 1974, the university, in order to protect its freedom to conduct the review and in order to comply with the collective bargaining agreement between petitioner's union representative and the college, gave petitioner notice on June 6, 1973 that he would not be recommended for tenure. Petitioner was invited to participate in the review, but refused. After review, a plan was submitted to the president on June 10, 1973. The plan recommended, *inter alia,* that faculty, including petitioner, previously recommended for tenure be granted continuing appointments. Despite this knowledge, petitioner, on August 15, 1973, orally resigned. The dean requested in writing that petitioner reconsider but he confirmed his resignation in writing on August 17, 1973. On August 22, 1973 the plan was accepted by the university. On August 24, 1973 petitioner, in writing, requested a leave of absence and a cancellation of his resignation. The dean, on August 28, 1973, in writing, refused petitioner's request for a leave of absence and reaffirmed the university's acceptance of petitioner's resignation. Petitioner filed a complaint against the college at Plattsburgh alleging his dismissal was predicated on discrimination on the basis of race, color and sex. The Division of Human Rights, after investigation, found no probable cause existed. This decision was affirmed by the Human Rights Appeal Board and this proceeding, pursuant to section 298 of the Executive Law, ensued. While petitioner's notice of motion and petition (Executive Law, § 298) were untimely filed with this court to the extent of one day, the papers were timely filed on the respondents and we prefer to dispose of the issue on its merits. A review of the record reveals that there is substantial evidence to support the determination of the State Division of Human Rights. There is nothing in the record to indicate that the investigative procedures, both the field work and at the hearing, were other than fair and thorough. Petitioner had a full and complete opportunity to state his case and to review all the documentary evidence submitted by the university. He failed to produce any evidence to support his contention of an unlawful discriminatory practice based on race, color or sex. In fact, the proof is to the contrary. There were five other faculty members whose appointments were held in abeyance pending the review. This group included two caucasian males, two caucasian females and one oriental male. All five, and petitioner, were recommended for tenure. It is difficult to perceive a more nondiscriminatory result. The petitioner did not sustain his burden of proving by substantial evidence the truth of his allegations of unlawful discrimination *(Matter of New York Tel. Co. v Wethers,* 30 NY2d 791;

*Matter of Nescott of East Islip v State Division of Human Rights,* 27 NY2d 787; *Matter of Jwayyed v New York Tel. Co.,* 42 AD2d 663). Petitioner's other contention, that the investigative procedures followed were defective because a union representative was not permitted to participate, is meritless. The rules of the Division of Human Rights permit only parties and their attorneys to participate in the preliminary proceedings which precede a finding of probable cause and public hearings. Such rules are not unreasonable and are helpful in enabling the Divison to discharge its duty of inquiry into the alleged facts. (9 NYCRR 465.8 [a] [1]–[3].) The termination of petitioner's employment had nothing to do with the tenure study or the plan that evolved therefrom. In fact,. petitioner was recommended for tenure. Termination was by voluntary resignation with knowledge of such recommendation. In the absence of any evidence in the record indicating any form of discrimination based on race, color or sex, the determination of the Division of Human Rights and the order of the Human Rights Appeal Board must be confirmed *(State Div. of Human Rights v Syracuse Univ.,* 46 AD2d 1002, mot for lv to app den 36 NY2d 643). Determination confirmed and petition dismissed, without costs. Sweeney, J. P., Kane, Mahoney, Larkin and Herlihy, JJ., concur.